```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
ALEX SUYANOFF,                                              :
                                                            :
                        Petitioner,                         :
                                                            :               **MEMORANDUM AND ORDER**
            -against-                                       :                    12-CV-05115 (DLI)
                                                            :
DUKE TERRELL,                                               :
                                                            :
                        Respondent.                         :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Petitioner Alex Suyanoff a/k/a Amnon Mordahaev ("Petitioner" or "Suyanoff") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking to avoid extradition to Brazil, where he was convicted of conspiracy to traffic narcotics and narcotics trafficking, and sentenced to a term of twelve years' imprisonment. Petitioner escaped from custody and fled to the United States. The Government of Brazil, acting through the United States Attorney for the Eastern District of New York, seeks to extradite Petitioner, pursuant to the Treaty of Extradition between the United States of America and Brazil of January 13, 1961 (the "Treaty"). On September 20, 2012, following a hearing, the Honorable Joan M. Azrack, United States Magistrate Judge, (the "Extradition Court") issued a Memorandum and Order rejecting Petitioner's objections to his extradition and finding him subject to extradition to Brazil. On September 27, 2012, the Extradition Court certified this matter to the Secretary of State and ordered that a warrant issue for Petitioner's surrender to the proper authorities in Brazil, but stayed the execution of that Order until October 12, 2012, to permit Petitioner to file the present application.

Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the evidence presented by the United States government at the extradition hearing in support of Brazil's request for extradition did not establish probable cause to believe that Petitioner was guilty of the crimes charged, and, therefore, not subject to extradition. For the reasons set forth below, the petition for a writ of habeas corpus is denied in its entirety.

**BACKGROUND**

On May 10, 2012, the Honorable Lois Bloom, United States Magistrate Judge, issued a provisional arrest warrant for Petitioner. According to the complaint and affidavit in support of the arrest warrant, Petitioner was sentenced in Brazil to a twelve-year term of imprisonment for drug trafficking charges. (Complaint, Docket No. 12-MJ-462, Docket Entry 1.) He escaped after serving three-and-a-half years and fled to the United States. (*Id.*) On May 21, 2012, Petitioner was arrested pursuant to that warrant. On that same date, the Extradition Court entered an order of detention. (Order of Temporary Detention, Docket No. 12-MJ-462, Docket Entry 5.)

On July 25, 2012, the government filed its formal extradition request (the "Extradition Papers"), which contained: (1) a declaration from attorney-advisor Jason A. Biros from the U.S. State Department, certifying that the documents were submitted by the Brazilian government pursuant to a treaty in full force and effect between Brazil and the United States; and (2) copies and translations of the formal charges and evidence from Petitioner's conviction in Brazil. (*See* Formal Extradition Request, Docket No. 12-MJ-462, Docket Entry 14.) The Extradition Court determined that these materials submitted by the Government of Brazil satisfied the documentary requirements set forth in Article IX of the Treaty. *See In re Extradition of Suyanoff*, 2012 WL 4328523, at *1 (E.D.N.Y. Sept. 20, 2012); *see also* 18 U.S.C. § 3184.

On September 13, 2012, the Extradition Court held an extradition hearing, where it heard oral argument from the government and Petitioner. (*See* Minute Entry, September 13, 2012, Docket No. 12-MJ-462, Docket Entry 23.) In his numerous written submissions and at the hearing, Petitioner argued, *inter alia*, that: (1) because the Brazilian courts had not followed their own laws in his criminal proceedings, the Extradition Court should not deem the fact of his criminal conviction in Brazil to constitute sufficient probable cause to believe he committed a crime, and (2) the extradition papers submitted by the Government of Brazil, on their own, did not establish probable cause to believe he committed the crimes for which he was convicted. (*See generally* Memorandum of Law in Support of Petition for a Writ of Habeas Corpus ("Pet. Mem."), Docket Entry 1.)

On September 20, 2012, the Extradition Court issued a Memorandum and Opinion rejecting Petitioner's objections and certifying he was extraditable to Brazil. *See generally Suyanoff*, 2012 WL 4328523. As set forth in its Memorandum and Opinion, the Extradition Court held that Petitioner was subject to extradition based on its findings that: (1) Petitioner was indeed the fugitive sought by the Brazilian government, (2) the crimes for which Petitioner was convicted are included in the Treaty, (3) the crimes for which Petitioner was convicted are felonies in the United States, and (4) the materials submitted by the Government of Brazil met the documentary requirements of the Treaty. *See id.* at *3. Accordingly, the Extradition Court concluded that Petitioner's conviction itself was sufficient to satisfy the probable cause requirement, and, even if the fact of the conviction itself was not, there was sufficient evidence in the papers to find probable cause. *Id.* at *5.

# DISCUSSION

## I. Standard of Review for Extradition Orders

An order certifying a request for extradition is not a final judgment that is appealable under 28 U.S.C. § 1291. *See Spatola v. United States*, 925 F.2d 615, 617 (2d Cir. 1991) ("*Spatola II*"). Instead, the fugitive may seek limited review by petitioning for a writ of habeas corpus. *See id.* The parameters of habeas review of an extradition order are "highly circumscribed." *Germany v. United States*, 2007 WL 2581894, at *4 (E.D.N.Y. Sept. 5, 2007) (citing *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973)). "The reviewing court may consider only (1) whether the judge below had jurisdiction; (2) whether the offense charged is extraditable under the relevant treaty; and (3) whether the evidence presented by the Government established probable cause to extradite." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000) (citing *Austin v. Healey*, 5 F.3d 598, 600 (2d Cir. 1993)). Thus, "[h]abeas corpus is not a writ of error, and it is not a means of rehearing what the certification judge or magistrate already has decided." *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990), *cert. denied*, 510 U.S. 1165 (1994) ("*Ahmad II*").

It is not the province of this Court to convert this habeas review "into a de novo review of the evidence." *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981). "The judgment of the magistrate, rendered in good faith on legal evidence that the accused is guilty of the act charged, and that it constitutes an extraditable crime, cannot be reviewed on the weight of the evidence, and is final for the purposes of the preliminary examination, unless palpably erroneous in law." *Ornelas v. Ruiz*, 161 U.S. 502, 508-509 (1896). Accordingly, "[t]he credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extraditing magistrate." *Austin*, 5 F.3d at 605 (quoting *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir.

1986)). Therefore, as part of the deference this Court owes to the Extradition Court, "[a] magistrate's finding that there is probable cause will not be overturned so long as there is any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Spatola v. United States*, 741 F. Supp. 362, 373 (E.D.N.Y. 1990), *aff'd*, 925 F.2d 615 (2d Cir. 1991) ("*Spatola I*") (citing *Collins v. Loisel*, 259 U.S. 309, 315 (1922)).

Petitioner's request for a writ of habeas corpus is denied, because the Extradition Court properly had jurisdiction, the crimes Petitioner is charged with were within the scope of the Treaty, and there was sufficient probable cause to believe that Petitioner is guilty of the crimes charged, as discussed in more detail below.[1]

## II. Extradition Court had Jurisdiction Over the Extradition Proceedings

The Extradition Court had jurisdiction to hear the case by virtue of 18 U.S.C. § 3184, which states, in relevant part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . , any justice or judge of the United States, or any magistrate judge authorized so to do by a Court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, . . . , issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that evidence of criminality may be heard and considered.

Here, all the prerequisites to jurisdiction were met: There is an extradition treaty in full force and effect between the United States and Brazil; the government filed a complaint under oath, and Petitioner was found within this district.

---

[1] Petitioner does not contest either the Extradition Court's jurisdiction or that the crimes charged by Brazil are within the scope of the Treaty. (*See generally* Pet. Mem.) However, for the sake of thoroughness, the Court briefly will review these issues herein below.

5

18 U.S.C. § 3184 does not require a specific delegation of authority from a district judge to a magistrate judge in order for the magistrate judge to conduct extradition proceedings. *See, e.g.*, *Austin*, 5 F.3d at 598. Nevertheless, in the Eastern District of New York, magistrate judges are specifically empowered to conduct hearings and consider evidence in extradition proceedings. *See* Local Crim. R. 58.1(b). Thus, the Extradition Court had jurisdiction to hear this matter.

### III. Offenses Charged are Within the Scope of the Treaty

Extraditable crimes are those "listed or defined as such by the applicable treaty." *Spatola I*, 741 F. Supp. at 371. The offenses with which Petitioner was charged and adjudged guilty in Brazil are encompassed by the Treaty. *See* Treaty, Article II ¶ 27 (listing "[c]rimes or offenses against the laws relating to the traffic in, or use of, or production or manufacture of, narcotic drugs or cannabis"). The Treaty also includes a dual criminality requirement, which provides that a person may be extradited only when his actions constitute an offense in both the requesting and requested states. *See* Treaty, Article I; *see also Yau-Leung v. Soscia*, 649 F.2d 914, 918 (2d Cir. 1981) (asking, "if the individual had committed the same acts in the United States, would a crime have been committed and would it have been a felony [under state or federal law]?") Here, the extraditable crimes—conspiracy to commit narcotics trafficking and narcotics trafficking—are felonies under United States federal law. *See* 21 U.S.C. §§ 841, 846 (prohibiting narcotics trafficking and conspiracy to commit narcotics trafficking). The offenses charged in Brazil are within the scope of the Treaty.

### IV. There Was Probable Cause to Establish that Petitioner is Subject to Extradition

As noted above, Petitioner does not dispute the validity of the Treaty nor its applicability to his crime of conviction. Therefore, extradition is proper if, based on the evidence before the

Extradition Court, "there is probable cause to believe that the individual committed acts alleged in the extradition request." *Spatola II*, 925 F.2d at 618; *see also Austin*, 5 F.3d at 605 ("The evidence presented need only support a reasonable belief that [the defendant is] guilty of the crime[s] charged.'") (quoting *Ahmad II*, 910 F.2d at 1066). Under this standard, the government is not required to present evidence sufficient to justify the underlying conviction, but rather must simply demonstrate that probable cause exists to believe that Petitioner is guilty of the crime charged. *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973). Here, Petitioner challenges the adequacy of Brazil's request for his extradition and contends the Extradition Court erroneously found that the requisite probable cause exists in his case.

### a. Determination of Probable Cause After a Foreign Conviction

Where a petitioner has been convicted after a trial at which he was present, a certified copy of a foreign conviction satisfies the probable cause requirement for an extradition order. *Spatola II*, 925 F.2d at 618 (holding that "where there has been a judgment of conviction [entered by a foreign court], there is no need for an independent determination of probable cause: the relator's guilt is an adjudicated fact which *a fortiori* establishes probable cause.") (internal quotations omitted); *Beukes v. Pizzi*, 888 F. Supp. 465, 467 (E.D.N.Y. 1995) ("In determining whether probable cause has been established, the certifying court may rely on an adjudication of guilt by a court in the requesting country."); *see also* Restatement (Third) of the Foreign Relations Law of the United States § 476 comment b (1987) ("With respect to persons whose extradition is sought after conviction in the requesting state, the requirement [of probable cause] is met by proof of the judgment of conviction and, where applicable, of sentence.").

To satisfy the probable cause requirement, the government presented certified documentation of Petitioner's conviction of one count of conspiracy to commit narcotics

trafficking and one count of narcotics trafficking. This showing is sufficient to warrant Petitioner's extradition to Brazil. No further probable cause is needed.

Petitioner nevertheless contends that, because his conviction allegedly was obtained in violation of his rights to counsel and to an interpreter, it is not sufficient to establish probable cause. Specifically, Petitioner claims he, in effect, was tried *in absentia*, because his trial was conducted in Portuguese, a language in which he claims to have very limited ability, and his requests for an interpreter were denied. (Pet. Mem. at 6.) Petitioner submitted an affidavit from Froim Icek Baumwol, the attorney who represented him at the court proceedings in Brazil. (*See generally* Brazilian Trial Attorney Froim Icek Baumwol ("Baumwol Aff."), Docket Entry 1, Exhibit B.) In that affidavit, Mr. Baumwol contends that, despite being informed that Petitioner did not speak or understand Portuguese, the Brazilian judge did not make any inquiry regarding Petitioner's understanding of Portuguese and did not appoint an interpreter to assist Petitioner. (*See* Baumwol Aff at 1; Pet. Mem. at 3-4.) Based on these facts, Petitioner contends the Extradition Court should have disregarded his conviction, and just applied the standard applicable to convictions obtained *in absentia*, which requires a finding of probable cause to believe the petitioner committed the charged crimes. (*See* Pet. Mem. at 10)

Petitioner's contentions have no merit and have no basis either in law or in fact. As an initial matter, the Extradition Court did make an independent finding of probable cause under the standard applicable to convictions obtained *in absentia*. Secondly, Petitioner's contention that his conviction itself does not satisfy the probable cause requirement is erroneous.

Petitioner raised this very argument regarding his lack of fluency in Portuguese in his appeal to the Brazilian appellate court. The Brazilian appellate court considered and rejected Petitioner's argument that he wrongfully was denied the right to a Portuguese interpreter, and,

8

thus, denied the right to a proper defense. *Suyanoff*, 2012 WL 4328523, at *5. The Brazilian appellate court "explain[ed] that 'the claim of denial of an opportunity to be heard for not appointing an interpreter is totally unfounded, because [Suyanoff] is fluent in the national language, as it is clear from his interrogation.'" *Id.* (citing Extradition Papers).

In reviewing this issue, the Extradition Court stated that it had "no reason to disbelieve the conclusions of two different courts in Brazil" regarding Petitioner's need for a translator. *Suyanoff*, 2012 WL 4328523, at *1. More importantly, the Extradition Court noted the Second Circuit's admonition that, "in extradition proceedings, 'it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.'" *Id.* (quoting *Ahmad II*, 910 F.2d at 1066). Petitioner effectively asks this Court to contravene this directive and consider whether the Brazilian courts correctly decided not to afford him an interpreter by making an independent determination that he did not need one. Such an analysis is plainly improper and the Extradition Court was correct in not following this course.

As discussed above, foreign convictions that were obtained following a trial at which the defendant was present and represented by counsel provide sufficient grounds upon which to establish probable cause. *See Spatola II*, 925 F.2d at 618. "To hold that such convictions do not constitute probable cause in the United States would require United States judicial officers to . . . substitute their judgment for that of foreign judges and juries. Such an inquiry would be inconsistent with principles of comity." *Id.* Without regard for this concern or the letter of the law, Petitioner also contends that the Extradition Court was wrong to not give weight to Mr. Baumwol's affidavit, which discussed Petitioner's purported lack of understanding of

Portuguese.  (*See* Pet. Mem. at 7.)  Petitioner notes that Mr. Baumwol's credibility was not challenged.  (*Id.*)  This argument is unpersuasive.

By highlighting Mr. Baumwol's affidavit and repeatedly questioning whether the Brazilian courts had a sufficient basis for their decision regarding an interpreter, Petitioner is asking this Court "to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation."  *Ahmad II*, 910 F.2d at 1066.  He asks that this Court reverse specific findings made by both the Brazilian appellate and trial courts.  This is exactly what this Court is not permitted to do.  "U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty."  *Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011).  Petitioner's objections to the propriety of the Brazilian judicial process are to be pursued in Brazil.  *See id.* ("Any arguments regarding the demanding country's compliance with its own laws, therefore, are properly reserved for the courts of that country.").

Accordingly, this Court concurs with the Extradition Court's determination that a certified copy of Petitioner's foreign conviction, obtained following a trial at which Petitioner was present, is sufficient to sustain a determination that probable cause exists to extradite.  On this basis, Petitioner's request of habeas relief is denied.

    **b.  Determination of Probable Cause Without a Foreign Conviction**

Although this Court finds that the record of Petitioner's conviction is sufficient for a finding of probable cause, the Court will consider, as the Extradition Court did, whether the Extradition Papers provide a sufficient, independent, alternative basis to conclude that there is

probable cause to believe that Petitioner committed the crimes for which Brazil seeks to extradite him.

Petitioner contends that "the standard applicable to convictions *in absentia* – requiring a finding of probable cause to believe that the defendant committed the charged crimes . . . should be applied here." (Pet. Mem. at 10.) Where a defendant was convicted *in absentia*, the conviction is merely a charge and an independent determination of probable cause in order to extradite must be made. *See Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960) (noting that "a foreign conviction *in absentia* does not preclude the federal court from considering whether sufficient evidence of the relator's criminality has been presented in the extradition proceeding"); *In the Matter of Extradition of Ernst*, 1998 WL 395267, at *7 (S.D.N.Y., July 14, 1998) (noting that where "the conviction is the result of a trial *in absentia*, the conviction is regarded merely as a charge, requiring independent proof of probable cause").

The Extradition Court held that, "even if this Court were to require more than the mere fact of Suyanoff's conviction[], the Extradition Papers provide a sufficient basis to conclude that there is probable cause to believe that Suyanoff committed the crimes for which Brazil seeks to extradite him." *Suyanoff*, 2012 WL 4328523, at *5; *cf. Haxhiaj v. Hackman*, 528 F.3d 282, 291 (4th Cir. 2008) (concluding, where a fugitive argued that his convictions were obtained *in absentia* and, thus, not sufficient to support his extradition, that the government had submitted sufficient additional evidence to establish probable cause).

To determine whether there was probable cause for the extradition, the Extradition Court held a hearing, as required by 18 U.S.C. § 3184. As described above, in addition to complying with the technical aspects of the extradition treaty, the Extradition Court is also required to evaluate the substance of the extradition application by determining whether probable cause

exists to believe that the Petitioner is guilty of the crimes charged. "To establish the level of probable cause necessary to certify one for extradition, evidence must be produced that is 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *Ahmad v. Wigen*, 726 F. Supp. 389, 399 (E.D.N.Y. 1989) (quoting *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973)).

This Court's habeas review of the Extradition Court's finding of probable cause is highly circumscribed and narrow. *See Murphy v. United States*, 199 F.3d 599, 601-602 (2d Cir. 1999) ("The function of habeas review in this context is to test only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the executive branch to decide.") (internal quotation omitted). Because such habeas corpus review "is not a means of rehearing what a judge presiding over an extradition hearing has already determined," this Court must give deference to the determinations of the Extradition Court as to "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Germany*, 2007 WL 2581894 at *4 (citations omitted).

Here, the Extradition Court reviewed the documents submitted by the Government of Brazil and noted:

> Among the evidence summarized are the statements of the arresting officer and other police that they observed Suyanoff meet several persons and take a large amount of cash in United States dollars from them. The police then searched the car of Suyanoff's personal driver, who had brought him to the meeting, and found a quantity of cocaine.

*Suyanoff*, 2012 WL 4328523, at *5. It concluded that "[t]his evidence alone is sufficient to establish the probability of criminal activity." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (noting that the proof necessary to establish probable cause is "only the probability, and not a prima facie showing, of criminal activity") and *Ernst*, 1998 WL 395267, at *8 ("Probable

cause is not an overly demanding standard.")). The Extradition Court also noted that none of Petitioner's evidentiary submissions, including the affidavit of Petitioner's trial attorney, explained away the testimony of the police officers. *Suyanoff*, 2012 WL 4328523, at *5 n.5. "A defendant who challenges extradition is limited to evidence which explains, rather than contradicts, the government's proof." *Germany*, 2007 WL 2581894, at *8 (citing *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973) and *United States v. Hunte*, 2006 WL 20773, at *6 (E.D.N.Y. Jan. 4, 2006)). Consequently, Petitioner's challenges to the Extradition Court's probable cause determination may not rely on Petitioner's purported inability to understand Portuguese, because these facts, even if true, do not explain away the government's proof.

Petitioner further challenges the Extradition Court's probable cause determination by claiming the extradition documents are unreliable, because they: (1) are summaries rather than transcripts of court proceedings or direct witness statements; (2) fail to identify the context in which they were created or the basis upon which they were created; and (3) are filled with hearsay, conjecture, and unsupported conclusions. (Pet. Mem. at 11-12.) This argument is unconvincing.

As the Extradition Court noted, "the typical standards for admissibility of evidence do not apply in extradition proceedings, and thus hearsay and other evidence that would be inadmissible at trial may be considered in determining probable cause." *In re Suyanoff* (citing *Ernst*, 1998 WL 395267, at *8-9 (collecting cases)); *see also Melia,* 667 F.2d at 302. The Extradition Court properly relied on this information in finding probable cause to extradite, as written summaries of evidence, including witness testimony, are both permitted and frequently utilized in establishing probable cause within the extradition context. *See, e.g.*, *United States v. Samuels*, 2009 WL 367578, at *2 (E.D.N.Y. Feb. 10, 2009) (granting extradition based, in part, on an

affidavit of a detective sergeant which "consist[ed] of summarized information gathered by various Canadian investigators who worked on the case, ballistics evidence, and statements from several eyewitnesses, setting forth the following factual allegations in support of a finding of probable cause."); *In re Extradition of Chan Hon-Ming*, 2006 WL 3518239, at *1 (E.D.N.Y. Dec. 6, 2006) (granting extradition, and noting that, "in lieu of producing witnesses at the hearing, the government relied upon a detailed sworn statement from the officer in charge of the investigation."); *United States v. Pena-Bencosme*, 2006 WL 3290361, at *2 (E.D.N.Y. Nov. 13, 2006) (noting that, "[h]earsay statements of witnesses summarized in the affidavit of a foreign official are admissible and may be sufficient to warrant a finding of probable cause").

After a careful and thorough review of the evidence, the Extradition Court found it to be credible and reliable, and concluded that "[t]he statements are not merely conclusory statements that Suyanoff committed a crime, but are the observations of several officers giving rise to a probability that Suyanoff committed a criminal act." *Suyanoff*, 2012 WL 4328523, at *5. It is not the role of this Court to revisit the Extradition Court's determinations regarding the credibility of the witness statements contained within the proffered evidence. *See Austin*, 5 F.3d at 605.

Based upon the evidence presented at the extradition proceeding, it was reasonable for the Extradition Court to find that there was probable cause to believe that Petitioner was guilty of the crimes charged.[2]

---

[2] Petitioner also argues that "the ordeals undergone by [him] during his prior imprisonment, and those that are likely to occur if he is returned to Brazil, form a relevant backdrop to this Court's consideration of the present petition." (Pet. Mem. at 2.) When analyzing requests for extradition under section 3184, a court must follow the "rule of non-inquiry" — a firmly established principle that precludes courts from examining the procedures or treatment awaiting the surrendered fugitive in the requested jurisdiction — and requires that it defer to the executive branch on such matters. *Hoxha v. Levi*, 465 F.3d 554, 563 (3d Cir. 2006); *United States v. Lui Kin-Hong*, 110 F.3d 103, 110-111 (1st Cir. 1997); *Sandhu v. Burke*, 2000 WL 191707, at *7 (S.D.N.Y. Feb. 7, 2000). As the Second Circuit has noted, "It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian

**CONCLUSION**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied and this action is dismissed. Petitioner is denied a certificate of appealability as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

Dated: Brooklyn, New York
       December 2, 2014

                                                                                   _____/s/_____
                                                                                         DORA L. IRIZARRY
                                                                          United States District Judge

---

grounds." *Ahmad II*, 910 F.2d at 1067. As such, Petitioner's concerns about his treatment upon return to Brazil more properly fall within the jurisdiction of the Secretary of State than this Court.